UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CHELSIE HIGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEERE HOUSE, d/b/a Steere House Nursing and Rehabilitation Center, | ) C.A. No. 25-cv-443-MRD-PAS |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge

## I.    INTRODUCTION

Before the Court is Defendant Steere House d/b/a Steere House Nursing and Rehabilitation Center's ("Steere House") Motion to Dismiss, ECF No. 16. Steere House seeks to dismiss Plaintiff, Chelsie Higgins' ("Higgins") Amended Complaint, ECF No. 15, in its entirety. Higgins brings various federal claims against Steere House under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117; the Federal Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*; and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, *id.* ¶¶ 94-98, 107-116, in addition to four state law claims, *id.* at 14-21. For the reasons stated below, Steere House's motion is **GRANTED** as it relates to Higgins' FMLA and ADA claims, and the Court **DIRECTS** the parties to engage in limited

discovery on her ERISA claim. The Court will reserve addressing the issue of supplemental jurisdiction over Higgins' state law claims until the completion of this discovery and resolution of Higgins' ERISA claim.

## II. BACKGROUND

The following factual background is taken from the Amended Complaint. Higgins alleges that she worked for Steere House as the Director of Finance and Management Information Systems from 2021 to 2023. ECF No. 15 ¶¶ 12-14. Given the nature of her work, Higgins believes she held a "fiduciary position." *Id.* ¶ 32. Serving in the role, she was responsible for "overseeing record keeping regarding the maintenance of benefit accrual data entered/changed or removed by the employer's HR Director." *Id.* ¶ 33. Higgins also claims that she "over[saw] audit duties related to payroll, ADP and process controls …" *Id.* ¶ 40.

According to Higgins, Steere House was involved in unlawful business practices under Rhode Island General Laws.[1] Specifically, Higgins alleges that Steere House was aware that its Human Resources Director unlawfully adjusted several employee hire dates, anniversary dates, and employee return-from-leave dates. *Id.* ¶ 34. These actions "had the potential to result in the loss of wage increases [for employees] and compensation," as well as "delay/loss of employee accrued benefits." *Id.* ¶ 36. She alleges that, if true, this practice would be in violation of

---

[1] The Court notes that Higgins failed to cite to a specific law in her allegations, merely stating "… and were violative of RI statutory law because such practices manipulated seniority dates to affect and influence employee annual age calculations." ECF No. 15 ¶ 36.

state law,[2] which forbids manipulation of seniority dates because it can affect and influence employee annual age calculations. *Id.* ¶ 36.

Throughout her employment, Higgins also claims to have suffered from certain chronic medical impairments including Postural Orthostatic Tachycardia syndrome and Mast Cell Activation Syndrome ("MCAS"). *Id.* ¶ 18. According to Higgins, "[Steere House's] refusal to take meaningful action in the face of the above-described problematic conduct resulted in severe stress to [her]," which in turn exacerbated her medical conditions. *Id.* ¶ 39. Because she held a fiduciary position, Higgins feared that she could face liability for Steere House's misconduct and could be named as a defendant in the event that Steere House was sued. *Id.* ¶¶ 60-61.

Higgins brought her concerns to Steere House's Executive Director and after doing so, she alleges that Steere House began to exclude her from meetings. *Id.* ¶¶ 64-65. She further alleges that this exclusion negatively impacted her ability to perform her duties. *Id.* Higgins also claims that she was "denied cooperation in managing policies and programs integral to the fiscal well-being and regulatory compliance obligations of [Steere House]." *Id.*

Due to all the workplace stress, coupled with her worsening medical conditions, Higgins requested a brief temporary work schedule modification. *Id.* ¶¶ 21-24. Her request was denied. *Id.* On or about August 21, 2023, approximately two weeks after the denial, Higgins took medical leave pursuant to the FMLA. *Id.*

---

[2] See above note.

¶¶ 25, 75.  On or about November 30, 2023, while on FMLA medical leave, Higgins submitted a letter of resignation to Steere House.  *Id.* ¶ 14.

On August 4, 2025, Higgins filed an initial complaint in the Superior Court for the State of Rhode Island.  ECF No. 1-2.  On September 5, 2025, Steere House removed the case to this Court.  ECF No. 1.  On December 10, 2025, Higgins filed the operative Amended Complaint.  ECF No. 15.  Therein, she alleges the following counts: Count I: Violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1;  Count II: Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 *et seq*;  Count III: Violation of the Americans with Disabilities Act, 42 U.S.C. § 12117;  Count IV: Violation of the RI Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-1; Count V: Violation of the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1 *et seq*;  Count VI: Violation of the Federal Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*; and Count VII: Violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461.

On January 7, 2026, Steere House filed the instant Motion to Dismiss Higgins' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 16.  On March 31, 2026, after several requests for an extension of time, Higgins filed a Response in Opposition to Steere House's Motion to Dismiss Higgins' Amended Complaint.  ECF No. 20.  On April 17, 2026, Steere House filed a Reply in Further Support of their Motion to Dismiss.  ECF No. 22.  The Court held Oral Argument on July 1, 2026.  Accordingly, the motion is now ripe and ready for disposition.

4

## III.    STANDARD

Under the Federal Rules of Civil Procedure, Rule 12(b)(6) motions are a vehicle used to dismiss deficient complaints. To meet the minimum requirement for a viable claim, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The make-or-break standard … is that the combined allegations, taken as true, must state a plausible … not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Department of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir. 2010*); see also Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). The federal pleading standard thus "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Accordingly, the Court "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Found. v. Massachusetts Bar. Found.*, 993 F.2d 962, 971 (1st Cir. 1993).

## IV.    DISCUSSION

Higgins asserts seven counts in her Amended Complaint, three of which are brought under federal law while the remaining four are state law claims. ECF No. 15 at 14-20. Before determining whether to exercise supplemental jurisdiction over Higgins' state law claims, the Court first turns to her federal claims, over which this

Court has original jurisdiction. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodriguez v. Doral Mortg. Corp.* 57 F.3d 1168, 1177 (1st Cir. 1995). This considered, the Court will first address Higgins' ADA claim, then her claim brought under the FMLA, and will conclude with discussion of her claim brought under ERISA.

A. Higgins' ADA Claim

The Court will first address Higgins' ADA claim.[3] ECF No. 15 ¶¶ 94-98. For Higgins' ADA claim to survive, she must "allege facts showing that (1) [s]he was disabled within the meaning of the Act; (2) [s]he could perform the essential functions of h[er] job, with or without reasonable accommodation, and (3) the employer took adverse action against h[er], in whole or in part, because of h[er] disability." *Roman-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 48 (1st Cir. 2011). The parties do not dispute that Higgins has met her burden as to the first two elements of her ADA claim. At issue is whether Steere House took an adverse action against Higgins.

---

[3] The Court notes that, in its briefing, Steere House did not argue that Higgins failed to file her action with the Equal Employment Opportunity Commission ("EEOC") within the obligatory time frame. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278-79 (1st Cir. 1999) ("a claimant who seeks to recover for an asserted violation of Title I of the ADA, like one who seeks to recover for an asserted violation of Title VII, first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits."). However, as aligned with the Supreme Court in *Zipes v. Trans World Airlines, Inc.*, the Court will not address this issue *sua sponte*, opting instead to note the timing in a footnote as the requirement is not a jurisdictional prerequisite. 455 U.S. 385, 398 (1982).

Steere House argues that Higgins' ADA claim fails because she did not suffer an adverse employment action. She was not terminated by Steere House and the Amended Complaint does not support Higgins' theory of constructive discharge. ECF No. 16 at 3-4, 19-20. Without explicitly arguing so, it appears that Higgins believes she did suffer an adverse employment action in the form of a constructive discharge. *See* ECF No. 20-1 at 8-9. Based on the allegations in the Amended Complaint, this theory is unavailing.

There is no debate that constructive discharge would constitute an adverse employment action under the ADA. *Walsh v. HNTB Corp.,* 169 F.4th 330, 342 (1st Cir. 2026). However, constructive discharge "has two basic elements. A plaintiff must prove first that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign … But [s]he must also show that [s]he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (internal citation omitted); *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) ("constructive discharge involves both an employee's decision to leave and precipitating conduct"). In *De La Vega v. San Juan Star, Inc.*, the First Circuit provides that demonstrating a constructive discharge requires a plaintiff to "show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." 377 F.3d 111, 117 (1st Cir. 2004) (quoting *Lee–Crespo v. Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003)). "In order to establish constructive discharge, [a plaintiff] must show that conditions were so intolerable that they rendered a seemingly voluntary

7

resignation a termination." *Torrech-Hernández v. General Elec. Co.*, 519 F.3d 41, 50 (1st Cir. 2008). The allegations in the Amended Complaint do not support this conclusion.

Higgins alleges that, as a result of her complaints about employee policies potentially affecting her role as a fiduciary, she was excluded from meetings, obstructed from completing functions of her position, and denied cooperation in managing "policies and programs integral to the fiscal well-being and regulatory compliance obligations of [Steere House]." ECF No. 15 ¶¶ 64-66. While the Court is unconvinced that these allegations rise to the level of "severe and oppressive" conduct necessary to find Higgins was constructively discharged, Higgins wholly fails to tie these allegations to her alleged disability. Under the ADA, the alleged adverse employment action must be "in whole or in part, because of h[er] disability." *Roman-Oliveras*, 655 F.3d at 48. Here, Higgins alleges that she was constructively discharged due to her complaints regarding business practices, with no mention of Steere House taking action against her because of her disability. This considered, she has failed to allege a plausible claim under the ADA. Steere House's Motion to Dismiss is thus properly **GRANTED** as it relates to Count III of the Amended Complaint, ECF No. 15 at 17, Count III is therefore **DISMISSED**. ECF No. 15 ¶¶ 94-98.

### B. Higgins' FLMA Claim

The Court next turns to Higgins' FMLA claim, Count VI of the Amended Complaint. ECF No. 15 ¶¶ 107-08. This Count is not robustly discussed by either

8

party in their briefing.  Steere House, for its part, does not go into the merits of the FMLA claim beyond asking this Court to dismiss the claim.  Higgins, for her part, does not direct the Court to any factual allegation in the Amended Complaint that suggests she has a meritorious FMLA claim.  Accordingly, as described in more detail below, she has failed to plausibly allege she is entitled to relief under the FMLA.

The FMLA "includes two types of provisions: 'those establishing substantive rights and those providing protection for the exercise of those rights.'"  *Carrero-Ojeda v. Autoridad de Energía Eléctrica,* 755 F.3d 711, 718 (1st Cir. 2014) (quoting *Colburn v. Parker Hannifin,* 429 F.3d 325, 330 (1st Cir. 2005)).  "To protect these rights, the FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny the exercise' of any FMLA right, 29 U.S.C. § 2615(a)(1); or (2) retaliate or 'discriminat[e] against employees … who have used FMLA leave,' such as by 'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions …'"  *Id.*  To establish an interference claim, "a plaintiff need only plausibly state that she is entitled to the disputed leave … The key issue is simply whether the employer provided its employee the benefits to which she was entitled per the FMLA."  *Id.* at 722 (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).  To establish a retaliation claim under the FMLA, "a plaintiff must show that '(1) [s]he availed h[er]self of a protected right under the FMLA; (2) [s]he was adversely affected by an employment decision; [and] (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action.'"

9

*Gomes v. Steere House*, 504 F. Supp. 3d 15, 18 (D.R.I. 2020) (citing *Hodgens,* 144 F.3d at 161).

> Regarding the FMLA, Higgins only alleges,
>
> 25. Within two weeks of her request for reasonable accommodation, and due to the Defendant's unlawful denial of same, Plaintiff was compelled to take a medical leave of absence pursuant to FMLA, taking her out of work entirely.
>
> . . .
>
> 108. The Defendant's discriminatory conduct, policies, and practices are violative of the provisions of the federal Family and Medical Leave Act, 29 U.S.C. [§] 2601 et seq.

ECF No. 15 ¶¶ 25, 108.   Being granted leave under the FMLA is not a basis for liability under the statute, and Higgins has not directed the Court's attention to any factual allegations to support her conclusory claim that Steere House has violated the FMLA in any other manner.   The Court is therefore compelled to DISMISS Count VI of the Amended Complaint.   *See Arrington v. Alabama Power Co.*, 769 F. App'x 741, 748 (11th Cir. 2019) ("Here, we cannot discern any allegation that would plausibly support a claim for either FMLA interference or retaliation.   Indeed, Plaintiff alleged that she was granted FMLA leave and failed to allege any facts supporting an inference that Defendant discriminated against her for taking that leave.").   Steere House's motion to dismiss is **GRANTED** to the extent that it addresses this claim.

### C.  Higgins' ERISA Claim

Next, the Court must resolve whether Higgins has plausibly alleged a claim under ERISA.   "ERISA § 502(a)(3)(B) authorizes a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief' to redress violations

10

of or enforce any provision of ERISA or the Plan." *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 782 (1st Cir. 2014) (citing 29 U.S.C. § 1132(a)(3)(B)). "COBRA requires employers to give employees the opportunity to continue health care coverage for a specified period of time after a 'qualifying event,' at the employee's expense." *Torres-Negrón v. Merck & Co.*, Inc., 488 F.3d 34, 45 (1st Cir. 2007) (citing 29 U.S.C. § 1161(a)). Under the language of the statute, the First Circuit has provided that "[t]ermination of employment is considered a qualifying event." *Id.* (citing 29 U.S.C. § 1163(2)). COBRA requires notification of the termination within 30 days of the qualifying event. 29 U.S.C. § 1166(a)(2). Plan administrators have fourteen days to notify the qualified beneficiary of her right to continued coverage. *Id.* § 1166(c).

Here, Steere House takes issue with the fact that Higgins has levied her ERISA claim "with little to no discussion of any predicate facts." ECF No. 16 at 7. Steere House elaborates: "The Amended Complaint [] asserts a single allegation regarding Consolidated Omnibus Budget Reconciliation Act ("COBRA") benefits in which [Higgins] alleges she did not timely receive her COBRA notification following her resignation, without further specification of what she received, when, and how that notice was untimely." *Id.* at 7-8. Of this, Steere House provides that while Higgins bases her ERISA claim on her allegedly untimely COBRA notice, such notice was not issued by Steere House, but instead a third-party administrator. *Id.* at 8. Thus, Steere House reasons that it cannot be held liable under ERISA. *Id.* In response, Higgins contends that she never received the necessary notification, or COBRA documentation as required under the statute. ECF No. 20-1 at 13. As Higgins sees

11

it, "[i]f [] she never received the requisite notification, all th[at] [Steere House] is doing in this motion is articulating its response as to why it disagrees with [Higgins]."

*Id.*

Per the Amended Complaint, Higgins avers that she never received timely notification of her COBRA benefits after her resignation. ECF No. 15 ¶¶ 111, 114. In support of its position otherwise, Steere House attaches two exhibits to its motion. *See* ECF Nos. 16-1, 16-2. Exhibit A is a Declaration from Steere House's Director of Human Resources, Uluma Sharpe which discusses the process by which Steere House notifies the third-party COBRA benefits administrator. ECF No. 16-1 at 2-3. Exhibit B contains a letter dated December 28, 2023 and addressed to "Ms. Chelsie Higgins," that details options for continuing COBRA coverage and contains a "COBRA Continuation Coverage Election Form." ECF No. 16-2 at 4-12. The letter was sent from the administrator of the COBRA plan, The Schuster Group/NFP, located in West Hartford, CT. *Id.* at 11.

Despite now arguing that she never received timely notice under COBRA, in her Amended Complaint, Higgins acknowledges this letter. ECF No. 15 ¶ 16. She alleges:

> [A]ny alleged notification from [Steere House] regarding her COBRA continuation coverage was manipulated to reflect erroneous dates by editing the metadata to misrepresent the date of issuance. Upon receiving the COBRA letter, [Higgins] through her counsel notified [Steere House] and its counsel of errors that required correction as well as notifying the third party administrator to no avail.

*Id.* In other words, Higgins seems to allege that the COBRA letter now submitted by Steere House is plagued with metadata modifications.

12

This poses an interesting dilemma for the Court. On one hand, at the pleading stage, all Higgins' allegations must be taken as true. *See* Fed. R. Civ. P. 12(b)(6). On the other hand, this Court is entitled to consider "documents incorporated by reference in [the Amended Complaint], matters of public record, and other matters susceptible to judicial notice." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003). Furthermore, when "factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Because the authenticity of the COBRA letter submitted by Steere House *is* challenged, the Court must review Higgins' ERISA claim under the summary judgment standard. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Consistent with the demands of Federal Rule of Civil Procedure 12(d), the Court will permit the parties 30 days to engage in limited discovery on the individual issue of whether or not Higgins was properly noticed under ERISA, and whether Steere House, instead of the third-party administrator, could be subject to any liability under ERISA.

D. Supplemental Jurisdiction Over State Law Claims

Because there are still federal questions to be resolved, the Court will reserve its decision as to whether it will exercise its supplemental jurisdiction over the state

13

law claims until after resolution of the ERISA issues identified *supra*. *See* 28 U.S.C. § 1367(c) (explaining that a district court may decline to exercise supplemental jurisdiction over an action when the court has dismissed the claims over which it has original jurisdiction).

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Steere House's Motion to Dismiss the Amended Complaint as it relates to Higgins' ADA claim (Count III) and FMLA claim (Count VI).  The Court **DIRECTS** the parties to engage in limited discovery as designated above and related to Higgins' ERISA claim (Count VII).  This discovery shall be completed within 30 days of this Order.  The Court **RESERVES** deciding whether to exercise of supplemental jurisdiction over Higgins' state law claims (Counts I, II, IV, and V) until after the disposition of Higgins' ERISA claim.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


7/31/2026

14